IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

M-I L.L.C. d/b/a M-I SWACO, §
 §
 Plaintiff, §
 §
v. § CIVIL ACTION NO. H-18-1099
 §
Q'MAX SOLUTIONS, INC.; Q'MAX §
AMERICA, INC.; and SANJIT ROY; §
 §
 Defendants. §

**MEMORANDUM OPINION AND ORDER**

Plaintiff M-I L.L.C. ("M-I") sued defendants Q'Max Solutions, Inc.; Q'Max America, Inc. (collectively, "Q'Max"); and Sanjit Roy ("Roy") (collectively, "Defendants") alleging a number of claims, including federal and state trade secret misappropriation claims against Q'Max and Roy and a breach of contract claim against Roy. Pending before the court is Plaintiff M-I LLC's Motion for Summary Judgment as to Trade Secret Misappropriation and Breach of Contract ("M-I's Motion") (Docket Entry No. 74). For the reasons explained below, M-I's Motion will be granted in part and denied in part.

## I. Factual and Procedural Background

M-I developed Virtual Hydraulics ("VH") and Presspro RT ("PPRT"), which are hydraulics simulation software used in oil and

gas drilling.[1] Roy worked as a developer at M-I for over 20 years.[2] During his tenure at M-I Roy worked to develop VH and PPRT among other well applications software.[3] While employed at M-I, Roy signed an Employee Invention and Confidential Information Agreement, wherein he agreed as follows:

> 5. I shall not, during the term of my employment or thereafter, disclose to others or use any confidential technical or business information belonging either to M-I or to a customer or client of M-I except as authorized in writing, respectively, by M-I or such customer or client. "Confidential technical or other confidential business information" means any information which I learn or originate during the course of my employment, regardless of whether it is written or otherwise tangible that (a) is not generally available to the public and (b) gives one who uses it an advantage over competition.
>
> 6. Upon termination of my employment, I shall surrender to M-I any and all things such as drawings, manuals, documents, photographs and the like (including all copies thereof) that I have in my possession relating to the business of M-I or any division or subsidiary thereof.[4]

---

[1] See Brief in Support of Plaintiff M-I LLC's Motion for Summary Judgment as to Trade Secret Misappropriation and Breach of Contract [SEALED] ("M-I's Brief"), Docket Entry No. 75, p. 11 ¶¶ SOF 4 - SOF 7. "SOF" refers to the paragraphs in the "Statement of Undisputed Facts" in M-I's Motion. [All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.]

[2] See id. at 12 ¶ SOF 13.

[3] See id.

[4] See Employee Invention and Confidential Information Agreement (the "Confidentiality Agreement"), Exhibit 3 to M-I's Brief, Docket Entry No. 75-3, p. 2.

Roy left M-I in May of 2014 and after a brief stint with Weatherford, another M-I competitor, Roy joined Q'Max in April of 2015.[5]

M-I alleges that before his departure Roy copied and retained documents containing M-I's confidential information. M-I's forensic expert, David Cowen, concluded that Roy copied M-I files onto various drives during his employment at M-I.[6] Notably, after accepting his position at Weatherford (and two days before his departure from M-I), Roy copied a number of files to an external drive.[7] Cowen's investigation found M-I's confidential data on computers and external drives in Roy's possession, including on Roy's Q'Max computer.[8] Cowen also concluded that Roy kept a full backup of his M-I computer that contained a number of confidential documents, including the source code for various versions of VH and PPRT.[9]

After Roy started at Q'Max he began developing MAXSITE Hydraulics ("MAXSITE"), a software program with the same models as

---

[5] See Complaint, Docket Entry No. 1, p. 5 ¶ 15.

[6] See Expert Report of David L. Cowen (the "Cowen Report"), Exhibit 7 to M-I's Brief, Docket Entry No. 75-7, pp. 8-10 ¶ 23.

[7] See id.

[8] See id. at 10-11 ¶ 25.

[9] See id. at 25-26 ¶ 39.

VH that could compete with VH.[10] In this action M-I claims that Roy used confidential documents he retained from his time at M-I to develop MAXSITE.[11] M-I's Complaint includes claims for copyright infringement in violation of 17 U.S.C. §§ 501, et seq.; violation of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.; violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001, et seq., against all Defendants; and breach of contract against Roy.[12] M-I's Motion only addresses its federal and state trade secret misappropriation claims and its breach of contract claim against Roy.[13] Defendants responded to M-I's Motion on May 2, 2019.[14] M-I replied to Defendants' Response on May 9, 2019.[15] M-I filed briefing supplementing its Motion with

---

[10]See M-I's Brief, Docket Entry No. 75, p. 15 ¶ SOF 30.

[11]See Complaint, Docket Entry No. 1, pp. 7-15.

[12]See id. at 7-17. Although M-I plead claims against David Wilson in its Complaint, M-I has since voluntarily dismissed Wilson from this action. See id.; Order Granting Plaintiff M-I L.L.C.'s Unopposed Motion for Voluntary Dismissal of Claims Against Defendant David Wilson Without Prejudice, Docket Entry No. 65.

[13]See M-I's Motion, Docket Entry No. 74, p. 1; M-I's Brief, Docket Entry No. 75, p. 7.

[14]See Defendants' Response in Opposition to M-I's Motion for Summary Judgment [SEALED] ("Defendants' Response"), Docket Entry No. 81.

[15]See Reply in Support of Plaintiff M-I L.L.C.'s Motion for Summary Judgment as to Trade Secret Misappropriation and Breach of Contract [SEALED] ("M-I's Reply"), Docket Entry No. 85.

new evidence on June 28, 2019,[16] to which Defendants responded on July 17, 2019.[17]

## II. **Standard of Review**

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).

The party moving for summary judgment must show the absence of a genuine issue of material fact. Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (citing Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or

---

[16]See Plaintiff M-I L.L.C.'s Supplement With New Evidence in Support of Motion for Summary Judgment as to Trade Secret Misappropriation and Breach of Contract ("M-I's Supplement"), Docket Entry No. 105.

[17]See Defendants' Response in Opposition to M-I's Supplement to Motion for Summary Judgment ("Defendants' Response to M-I's Supplement"), Docket Entry No. 109.

other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III. Analysis

M-I moves for summary judgment on its state and federal trade secret misappropriation claims against Defendants and its breach of contract claim against Roy. Defendants argue that genuine issues of fact remain as to M-I's trade secret misappropriation claims. Defendants also argue that summary judgment is not appropriate on M-I's breach of contract claim against Roy because Roy has raised fact issues as to his affirmative defenses of waiver and laches.

## A. Trade Secret Misappropriation Against Defendants

In its Complaint M-I alleges that documents retained by Roy after he left M-I contain trade secrets under both the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA").[18] M-I argues that it is entitled to summary judgment on its misappropriation claims because no genuine dispute of material fact remains as to whether Roy and Q'Max misappropriated M-I's trade secrets through wrongful acquisition, disclosure, and use.[19] Defendants disagree, arguing that disputes of material fact remain as to (1) whether the documents relied on by M-I in its Motion contain trade secrets and (2) whether Q'Max or Roy "used" M-I's alleged trade secrets.[20] Because M-I's TUTSA and DTSA claims will require proof of the same elements in this case, the court will consider M-I's federal and state trade secret misappropriation claims together.[21]

---

[18]See Complaint, Docket Entry No. 1, pp. 10-11 ¶¶ 40-41, 13 ¶ 54.

[19]See M-I's Brief, Docket Entry No. 75, pp. 24-26.

[20]See Defendants' Response, Docket Entry No. 81, pp. 14-25.

[21]The parties do not present separate arguments addressing M-I's claims under TUTSA and the DTSA. Further, as discussed in detail below, TUTSA's definitions for "trade secrets," "improper means," and "misappropriation" are functionally identical to those in the DTSA, which is TUTSA's federal counterpart.

1.  <u>Trade Secret Misappropriation Under TUTSA and the DTSA</u>

Both TUTSA and the DTSA permit recovery of damages for trade secret misappropriation. Tex. Civ. Prac. & Rem. Code § 134A.004; 18 U.S.C. § 1836(b)(1) (permitting recovery for trade secret misappropriation if a trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce"). "To prevail on a misappropriation of trade secrets claim, a plaintiff must show that (1) a trade secret existed, (2) the trade secret was acquired through breach of a confidential relationship or discovered by improper means, and (3) the defendant *used* the trade secret without authorization from the plaintiff." <u>GE Betz, Inc. v. Moffitt-Johnston,</u> 885 F.3d 318, 325 (5th Cir. 2018) (internal quotation marks omitted) (emphasis in original). "Improper means" includes, but is not limited to, a breach of a duty to maintain the secrecy of a trade secret. Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6). TUTSA defines "trade secret" as:

> [A]ll forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Id. at § 134A.002(6).[22] "Whether a trade secret exists is a question of fact." GlobeRanger Corporation v. Software AG United States of America, Incorporated, 836 F.3d 477, 492 (5th Cir. 2016). Texas courts weigh six factors to determine whether a trade secret exists:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Id. (citing In re Union Pacific Railroad Co., 294 S.W.3d 589, 592 (Tex. 2009)).

"A cause of action for misappropriation of trade secrets accrues when the trade secret is *actually used*." GE Betz, 885 F.3d

---

[22]The DTSA's definition of "trade secret" is functionally identical: "the term 'trade secret' means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." Compare 18 U.S.C. § 1839(3), with Tex. Civ. Prac. & Rem. Code § 134A.002(6).

at 325-26 (quoting Computer Associates International, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996)) (emphasis in original). Texas courts and courts in the Fifth Circuit rely on The Restatement of Unfair Competition to determine what constitutes "use":

> Any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use" under this Section. Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret . . . all constitute "use."

See Restatement (Third) of Unfair Competition § 40 cmt. c; see also Bohnsack v. Varco, L.P., 668 F.3d 262, 279 (5th Cir. 2012) (citing and quoting Restatement (Third) of Unfair Competition § 40 cmt. c); Wellogix, Inc. v. Accenture, L.L.P., 716 F.3d 867, 877 (5th Cir. 2013) (same); Southwestern Energy Production Company v. Berry-Helfand, 491 S.W.3d 699, 722 (Tex. 2016) (defining "use" by citing and quoting Restatement (Third) of Unfair Competition § 40 cmt. c). "Proof of trade secret misappropriation often depends on circumstantial evidence." Southwestern Energy Production Company v. Berry-Helfand, 411 S.W.3d 581, 598 (Tex. App. -- Tyler 2013), rev'd on other grounds, 491 S.W.3d 699 (Tex. 2016). "Circumstantial evidence often requires a fact finder to choose among opposing reasonable inferences." Id. at 591.

2. <u>M-I's Trade Secret Misappropriation Claims against Defendants</u>

Defendants argue that summary judgment on M-I's misappropriation claims is not appropriate because: (1) fact issues exist as to whether the documents discussed by M-I in its Motion contain trade secrets under the DTSA and TUTSA, and (2) fact issues remain as to whether Defendants "used" the alleged trade secrets.

In its Complaint M-I bases its claims under TUTSA and the DTSA on "trade secrets in the components of M-I's engineering application tools VIRTUAL HYDRAULICS, VIRTUAL COMPLETION SOLUTIONS, and PRESSPRO RT; in the computer program code of such software applications; in other confidential programming code; and in proprietary constants, methods, plans, designs, concepts, improvements, modifications, research data and results, and know-how related to M-I's engineering application tools, interactive content, modeling, predictive modeling, and certain proprietary databases."[23] M-I's Brief only addresses trade secrets allegedly present in a few of these documents, including: a slide deck entitled "VIRTUAL HYDRAULICS, Basic Concepts," a VH Spreadsheet, a "snapshot" of a VH signature plot, and the VIRTUAL HYDRAULICS 3.3

---

[23]<u>See</u> Complaint, Docket Entry No. 1, pp. 9 ¶ 36, 12 ¶ 50.

Handbook Draft. Similarities between these M-I documents and corresponding Q'Max documents form the basis of M-I's Motion.[24]

Defendants dispute whether the specific documents referenced in M-I's Motion contain trade secrets.[25] M-I's Brief includes only a generalized argument that VH has independent value and that M-I uses reasonable efforts to maintain the secrecy of its "Confidential Information."[26] M-I fails to explain why the specific documents referenced in its Statement of Undisputed Facts contain trade secrets. General arguments that VH is a trade secret and that M-I's "Confidential Information" contains trade secrets are not sufficient to persuade the court that a trade secret exists in the documents upon which M-I bases its Motion. Fact issues therefore remain as to whether the documents relied on by M-I contain trade secrets.

---

[24]See M-I's Brief, Docket Entry No. 75, pp. 16-22 ¶¶ SOF 35 - SOF 50.

[25]Defendants present a number of arguments as to why the documents referenced by M-I do not contain trade secrets. For example, Defendants argue that the slide deck referenced in M-I's Statement of Undisputed Facts was presented to clients and therefore efforts were not made to keep the information secret. See Defendants' Response, Docket Entry No. 81, p. 18. The court need not reach these arguments because M-I has failed to meet its initial burden to show the absence of a genuine issue of material fact as to whether the documents referenced in M-I's Brief contain trade secrets.

[26]See M-I's Brief, Docket Entry No. 75, pp. 22-23.

M-I has also failed to meet its initial burden to show the absence of a genuine issue of fact as to whether Defendants "used" M-I's alleged trade secrets. M-I relies on the Cowen Report to show that Roy and Q'Max "used" and "accessed" M-I's confidential data.[27] But the Cowen report does not prove that Defendants used M-I's information in developing MAXSITE. Cowen concluded that Roy possessed and accessed M-I's confidential data during his time at Q'Max, making his report consistent with M-I's allegations, but not conclusive on the issue of use.[28]

M-I also argues that an e-mail chain between Roy and other Q'Max employees conclusively establishes that Defendants "used" a M-I document in developing MAXSITE.[29] Chase Brignac, a Q'Max employee, sent an e-mail to Roy and other Q'Max employees saying "[t]his is what I have been using to try and review a different look for the output."[30] Attached to Brignac's e-mail was a Q'Max document that M-I alleges contains M-I's data that was "copied and

---

[27]See M-I's Brief, Docket Entry No. 75, pp. 24-25.

[28]See Cowen Report, Exhibit 7 to M-I's Brief, Docket Entry No. 75-7, pp. 14-15 ¶¶ 30-35, 25 ¶ 37, 40-41 ¶¶ 83-89.

[29]See M-I's Brief, Docket Entry No. 75, p. 25; M-I's Reply, Docket Entry No. 85, p. 7.

[30]See E-Mail Chain Between Chase Brignac, Sanjit Roy, and Steve Lattanzi [With Attachment], Exhibit 2 to M-I's Brief, Docket Entry No. 75-2, pp. 2-4.

simply rearranged."[31] Roy instructed Brignac to "keep playing around" with the software outputs because they were "too close to you know what."[32] This e-mail chain is circumstantial evidence but is not conclusive on the issue of use.

M-I has presented strong circumstantial evidence of misappropriation: Roy downloaded confidential documents during his time at M-I and kept those documents while working for M-I's competitors. M-I documents were found on Roy's Q'Max computer and forensic analysis shows that Roy accessed M-I's confidential documents. Roy e-mailed Brignac instructing him to "keep playing around" with Q'Max's software because it was too similar to "you know what," likely referring to VH. VH and MAXSITE also have a similar look and similar features.[33] To be entitled to summary judgment, however, M-I would need to demonstrate the absence of a genuine dispute of material fact as to whether Q'Max and Roy actually used M-I's documents to develop MAXSITE. While similarities between VH and MAXSITE may be sufficient to raise an inference that Defendants used M-I's trade secrets, see Spear

---

[31]See id.; M-I's Brief, Docket Entry No. 75, p. 17 ¶ SOF 41.

[32]See E-Mail Chain Between Chase Brignac, Sanjit Roy, and Steve Lattanzi, Exhibit 12 to M-I's Motion [Without Attachment], Docket Entry No. 75-11, pp. 3-4.

[33]Q'Max also points to several important differences between VH and MAXSITE: the two programs are written in different programming languages, use "different graphics packages," and each contains features that the other does not. See Defendants' Response, Docket Entry No. 81, pp. 22-24.

Marketing, Inc. v. BancorpSouth Bank, 791 F.3d 586, 601 (5th Cir. 2015), such an inference is insufficient to entitle M-I to summary judgment.

In the cases cited by M-I, specifically GlobeRanger and Wellogix, the Fifth Circuit reviewed the sufficiency of evidence to support a jury's determination as to whether a defendant misappropriated trade secrets. See GlobeRanger, 836 F.3d at 499; Wellogix, 716 F.3d at 877. A jury could conclude after reviewing the circumstantial evidence presented that Defendants misappropriated M-I's trade secrets in developing MAXSITE. But M-I's summary judgment burden is greater than the one it will ultimately bear at trial.

For the reasons explained above, M-I has failed to satisfy its initial burden to show that there is no genuine dispute of material fact as to (1) whether the documents upon which M-I relies contain trade secrets and (2) whether Defendants used M-I's alleged trade secrets. The court will therefore deny M-I's Motion seeking summary judgment on its federal and state trade secret misappropriation claims.

B. **Breach of Contract Against Roy**

M-I alleges that Roy retained a number of M-I's confidential documents after leaving M-I in violation of the Confidentiality

Agreement.³⁴ M-I argues that the facts regarding Roy's violation of the Confidentiality Agreement are undisputed and that it is entitled to summary judgment against Roy.³⁵ Roy does not deny that he breached the Confidentiality Agreement by retaining M-I's documents. Roy argues that M-I is not entitled to summary judgment on its breach of contract claim against him because he has raised fact issues as to his affirmative defenses of waiver and laches.³⁶

Under Texas law the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009). Texas courts recognize waiver and laches as affirmative defenses to a breach of contract claim. "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." Ulico Casualty Co. v. Allied Pilots Association, 262 S.W.3d 773, 778 (Tex. 2008). "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent

---

³⁴See Complaint, Docket Entry No. 1, pp. 15-16 ¶¶ 69-70.

³⁵See M-I's Brief, Docket Entry No. 75, pp. 26-27.

³⁶See Defendants' Response, Docket Entry No. 81, pp. 25-29.

with that right." Id. "To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights, and also the moving party's good faith and detrimental change in position because of the delay." In re Laibe Corp., 307 S.W.3d 314, 318 (Tex. 2010). Texas courts generally find that laches do not apply if a statute of limitations applies. Graves v. Diehl, 958 S.W.2d 468, 473 (Tex. App. -- Houston [14th Dist.] 1997, no pet.). The Texas statute of limitations for a breach of contract is four years. Tex. Civ. Prac. & Rem. Code § 16.051.

Roy argues that M-I waived its breach of contract claim by not discovering that he breached the Confidentiality Agreement sooner.[37] M-I argues that it performed forensic analysis after it realized Roy's potential breach of contract -- specifically, after Q'Max announced the MAXSITE sample images on its website in 2017.[38] M-I did not have an affirmative obligation to investigate whether Roy had violated the Confidentiality Agreement when he left M-I in 2014. The summary judgment evidence establishes that M-I did not have actual knowledge of Roy's breach until after its forensic investigation revealed that he had downloaded confidential M-I documents to external drives and was still in possession of those documents. Roy has presented no evidence that M-I intended to

---

[37]See id. at 27.

[38]See M-I's Reply, Docket Entry No. 85, p. 11.

relinquish its breach of contract claim or that M-I engaged in intentional conduct inconsistent with its breach of contract claim. The evidence shows the opposite: M-I promptly filed this action after its forensic investigation revealed that Roy had retained documents in violation of the Confidentiality Agreement.

Roy also argues that laches applies to bar M-I's claim. He argues that M-I waited "just shy of 4 years" after Roy's departure to bring its breach of contract claim against Roy.[39] He therefore does not dispute that M-I's breach of contract claim was brought within the applicable statute of limitations. Roy has presented no evidence or argument that laches should bar M-I's breach of contract claim despite its being brought within the statute of limitations. The court therefore finds the doctrine of laches inapplicable in this action.

No issues of fact remain regarding Roy's affirmative defenses of waiver and laches, and Roy does not dispute that he breached the Confidentiality Agreement by retaining M-I's documents after leaving M-I. Roy will therefore be liable to M-I for breaching the Confidentiality Agreement. Fact issues remain as to the scope of

---

[39]M-I argues that it did not discover Roy's breach until 2017 and filed this action "within months of actual knowledge of a claim." See M-I's Reply, Docket Entry No. 85, p. 12. The court need not determine when the statute of limitations began to run because under both parties' arguments, M-I's breach of contract claim was brought within the applicable four-year statute of limitations.

Roy's breach, and consequently the amount of damages M-I is entitled to.

## IV. Conclusion

For the reasons explained above, fact issues remain regarding M-I's trade secret misappropriation claims against Defendants. While the court has found that Roy breached the Confidentiality Agreement, the scope of the breach (and M-I's damages) will be determined at trial. Plaintiff M-I LLC's Motion for Summary Judgment as to Trade Secret Misappropriation and Breach of Contract (Docket Entry No. 74) is therefore **GRANTED IN PART** and **DENIED IN PART**.[40]

**SIGNED** at Houston, Texas, on this the 6th day of August, 2019.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[40]Because the court's normal practice is to allow each party to file only one dispositive motion, M-I may not file another motion for summary judgment.